Judge Underwood
delivered the Opinion of the0Court.
Two points only present themselves in this case:—
First. Do', words proven to have been spoken in the second person, sustain a count for slander in which the words alleged to have been spoken, are in the third person?
Second. Is the affidavit of the defendant, upon a motion for a new trial, sufficient evidence of the fact, that one of the jurors was the uncle by, marriage of the plantiff, and of surprise on the part, of the defendant, that a juror thus .disqualified constituted one of the pannel?
The first point was decided by this court, in the case of Huffman vs. Shumate, 4 Bibb, 515. It is now more than seventeen years since that case laid down the true doctrine to be, that a declaration charging (he speaking of words in the third person, was substantially supported by proof of words uttered in the second person. The court advert to the opinion given by Lord Mansfield in the case of Averillo vs. Rogers, and disallow the distinction taken by his lordship, as the foundation of the. difference between words spoken in the second and in the third person. Perhaps it,is not altogether true, that the reason for the difference is based upon the ground, that slanderous words spoken in the second person are generally attended by passion, whereas those spoken in the third person are usually the consequence of cold and deliberate malice. Words may be spoken either way, through heat, or with calm and deliberate malice. The distinction may probably find a more congenial foundation in the technical notions which at one time required great strictness between the allegata and probata. Be the origin of the doctrine what it may, the commendable research of counsel for the plaintiff in error, has *530 clearly shewn, that the doctrine of Lord Mansfield pre* vails in England and in several of the ‘American states. Notwithstanding this, we think it best to adhere to the case °*' Huffman vs. Shumate, it has been ¡mg acquiesced in. It cannot operate as a hardship np .n a defendant to require him to go to trial prepared to justify what he has said, whether it be in the second or third person. And as to the distinction founded on the difference between words spoken in anger and passion, to' the face, and words spoken in mere malice, behind the back, it is no more than any other circumstance which can address itself to the good sense of the jury, and have its proper influence in regulating the amount of the verdict. The jury may just as well make a proper allowance for the manner in which the words were spoken in the first action, as to do it in a second suit, after the court has nonsuited the plaintiff. The amount of the verdict should depend upon the evidence, and not upon the averments in the declaration.
Upon the second point, we are of opinion, that the affidavit of a defendant is sufficient It was so settled in the case of Ewing vs. Price, 3 J. J Marshall, 520. If the plaintiff disputes the facts stated in a defendant’s affidavit, on application to the court for that purpose, time should be allowed to ta' e and file counter affidavits. In this case, the nature of the fact stated by Dailov, is such, that we must, presume it to have been within the knowledge of Gaines If it was not true as stated, it was as easy to prove that the juror was not the uncle by marriage of the plaintiff, as to prove the affirmative. There was no countervailing proof offered, and we feel bound therefore to take Dnilév’s affidavit astrue.
That affinity, as well as consanguinity, constitutes a ground of “principal challenge” to n juror, we have no doubt. The relation between the plaintiff in the circuit court, and the juror Stevens, he being the plaintiff’s uncle by marriage, was within the degrees which rendered the juror incompetent. The affidavit of Dailey shews a case of surprise.
Wherefore, the judgment is reversed, with costs, and the cause remanded for a new trial.