JOHN ALDRIDGE V. STATE

No. 32,571. December 27, 1960

Motion for Rehearing Overruled February 1, 1961

*John Lee Smith,* Lubbock, for appellant.

*George Gray,* County Attorney, Odessa, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge

This is a criminal libel suit.

The indictment charged that appellant did unlawfully and maliciously make, publish and circulate a malicious printed statement of and concerning and affecting the reputation of William B. Deaderick.

Appellant was tried before County Judge Gerald K. Fugit, a jury trial having resulted in a conviction with punishment assessed at 9 months in jail.

The statement was alleged to have been made, published and circulated on or about April 4, 1959. Judge Fugit took office as county judge some 32 days earlier.

The overruling of appellant's motion to disqualify Judge Fugit is the first and principal ground upon which reversal is sought.

The statement set out in the indictment reads:

### "EDITORIAL

"Mr. Maney I see by the newspaper that you and Mr. Hamilton are back in the RINGMASTER'S hair, you should be very careful about this after all the RINGMASTER is a very handsome man and also a very DISTINGUISHED Gentlemen.

"You can rest well assured Mr. Maney that if you do anything with the members of the BIG THREE of the Commissioners Court you will have to take them to court. Also do not have any fear that the Commissioners Court doesn't STINK, and has for many years. And to further prove just how bad it STINKS, who did they hire as one of their attorneys to defend them in the injunction suit. None other than the Honorable William B. Dedrick former District Judge of the 70th, Judicial Court of Ector County, this man has about as much respect for the laws of the State and County, the American heritage and the American way of life as Nikita Khruschev of Russia has, To prove this FACT I, refer you to the case No. 10,297, tried in 1955 before Honorable William B. Dedrick the District Judge at that time.

"Could it be that the members of the BIG THREE of Ector County Commissioners Court, hired SKULL DUGGERY Dedrick to ask for a delay in this injunction suit. So that he could go to Austin and thru Special Legislation make all of the things that

the Ector County Commissioners have done illegally made legal thru Special Legislation? The BIG THREE will go to no ends to try and clear their own skirts. And they certainly hired the right man to help them try to wiggle out of the CORRUPTION.

"Let's go back to case No. 10,297 styled John Aldridge vs. Universal Credit Corporation a powerful New York Financing concern, this was a closed and shut case against the Universal Credit Corporation. So air tight was this case that the Universal Credit Corporation would not put a witness on the stand. In other words there was no chance for the Universal C.I.T. Corporation to win this case except thru SKULL DUGGERY or MANIPULATION. And this the Universal C.I.T. Corporation used.

"The case was tried before a jury of 12 men, Mr. Dedrick was Judge of the District Court, Mr. Dedrick instructed the Jury to award damages, this the jury did, without any question or quibbling in the sum of $1,5.00.00. The very next morning after the trial Mr. Bill Blanton, who was Mr. Dedrick's law pardner, and whom the Uuiversal C.I.T. Corporation hired to defend them, the very next morning these two fine Honorable Gentlemen went into the Judge's Chamber and reversed the decision of the Jury, of course they were the only two present. WHY?

"There are only TWO conclusions that you could draw from this case either Mr. Dedrick is a man of very, very, high PRINCIPLE, or the powerful Universal C.I.T. Corporation apparently slipped a little pay OFF MONEY under the table. But why under the shinning sun would a District Judge risk his reputation, his honor and the respect of his court for a paltry $1,500.00. Just because the suit was between an individual and a big New York Financial Concern?

"The actual FACTS of this case can be checked at the office of Neva Rose the District Court Clerk, or Mr. Charles Thomas Vice-President of the First National Bank of Odessa. Who acted as foreman of this Jury.

"It has always been my solemn belief that when a Jury of 12 men decided a case it was FINAL, and even tho it is within the Judicial power of the District Judge to Reverse the decision of a Jury. Why would a District Judge place himself on such a spot? Could it have been that Judge Dedrick had a flexible MIND or did he just have a yen for MONEY?

"The Universal C.I.T. Corporation has a lot of it. But

FRANKLY I think they have a little less now since they had an encounter with Mr. Dedrick.

"The fact that William B. Dedrick willfully and deliberately cheated me out of $1,500.00 is of little importance, but the sound BASIC PRINCIPLE that he kicked out the door. Is of great importance to the American people, the American people have always believed in JURY TRIALS because they have believed that the decision of 12 men would be FAIR and EQUITABLE to all parties concerned. But not Mr. Dedrick apparently he believes along the same line of Nikita Khrushchev of Russia. I was the POWER when I was District Judge and I did as I saw fit and the JURY had nothing to do with it, I was the SUPREME POWER.

"Not long after this incident (Old SKULL DUGGERY Dedrick( resigned as District Judge and accepted a position on the Legal Staff of the Forest Oil Corporation of San Antonio, Texas, and moved down to the fair City of San Antonio. But maybe something happened that he couldn't get on the inside CLIQUE of San Antonio. Therefore he moves back to Odessa and tells the BIG BRASS here in Odessa BIG BILL DEDRICK is back in town is there any way at all that I can help you CORRUPT Gentlemen if there is I am at your service."

Appellant's motion appearing in the transcript sought to have Judge Fugit disqualify himself, alleging that he had good reason to believe and did believe that Judge Fugit was prejudiced against him.

It would serve no useful purpose to discuss the evidence heard on the motion, except to say that Judge Fugit denied any such prejudice and the facts admitted raised the issue that he was. If in fact Judge Fugit was prejudiced against appellant, this would not disqualify him. Prejudice of a trial judge not based upon interest is not legal disqualification. Johnson v. State, 31 Tex. Cr. R. 456, 20 S.W. 985; Williams v. State, 126 Tex. Cr. R. 42, 69 S.W. 2d 759. When indicated or shown, any prejudice or opinion of guilt on his part calls for close scrutiny of the judge's rulings. Williams v State, supra, and cases cited.

Appellant's counsel argues, however, that Judge Fugit, being a member and the presiding officer of the commissioners court, was disqualified because of interest under Art. V, Sec. 11 of the Constitution of Texas, which reads in part: "No judge shall sit in any case wherein he may be interested, * * * ."

It is also contended that Judge Fugit was disqualified to try the case under Art. 552 V.A.C.C.P., which provides: "No judge or justice of the peace shall sit in any case where he may be the party injured, * * * ."

The distinction between the provision of the Constitution which prohibits a judge from sitting "in any case wherein he may be interested," and the statute which provides that no judge shall sit "in any case where he may be the party injured" was discussed in January v. State, 36 Tex. Cr. R. 488, 38 S.W. 179.

The Supreme Court of Texas, then exercising final jurisdiction in criminal as well as civil cases, had held in Davis v. State, 44 Tex. 523, that the ownership of property alleged to have been stolen from him did not disqualify a judge under the constitution, because he was not, by virtue of being the owner of such property, "interested in the case," he not being a party thereto or liable to any loss or profit therefrom, otherwise than as any other person in the body politic.

In January v. State it was pointed out that the constitution said nothing about injury, whereas the statute which came into being after the Davis decision (now Art. 552 C.C.P.) says nothing about being interested in the case, but refers to the "party injured." Since January v. State was handed down, a judge who owns property alleged to have been stolen is disqualified to try the case under the statute, because he is the party injured.

Having disposed of the contention that Judge Fugit was disqualified because of prejudice, we next consider whether he was disqualified under the constitution because it was a "case wherein he may be interested."

There is no showing that Judge Fugit was "The Ringmaster"; was one of the "Big Three" of the commissioners court who "hired Skull Duggery Dedrick," or was the "Big Brass" in Odessa, referred to in the libelous statement. Judge Fugit had been in office but a short time when the statement was published.

Ex parte Kelly, 111 Tex. Cr. R. 54, 10 S.W. 2d 728, relied on by appellant, states the correct rule: "It may be stated as the general rule that the acts of a judge are void, who is subject to any of the disqualifications mentioned in the constitution. * * * The rule, too, is that a judicial officer who has a direct interest in the case or matter to be adjudicated, so that the result must necessarily effect him to his personal or pecuniary loss or gain, is

disqualified. \* \* \* Such interest must be direct, real, and certain, not merely incidental, remote, contingent or possible." See also Ex parte Largent, 144 Tex. Cr. R. 592, 162 S.W. 2d 419, 426.

The interest which disqualifies a judge does not signify every bias, prejudice or partiality which he may entertain with reference to the case.

The constitutional prohibition does not disqualify a judge who is interested in the question to be decided, but who has no direct and immediate interest in the judgment to be pronounced. A judge, not being disqualified, has the duty, however embarrassing, to proceed with the trial. Love v. Wilcox (Sup. Ct.) 28 S.W. 2d 515.

We conclude that Judge Fugit was not disqualified under the constitutional provision that no judge shall sit in any case wherein he may be interested.

The remaining question is whether Judge Fugit was disqualified under Art. 552 C.C.P., which provides that no judge shall sit in any case where he may be the party injured.

We are cited to no authority and know of none which would support a holding that Judge Fugit, because of his connection with the commissioners court for some 32 days was a party injured by the libelous statement. We hold that he was not disqualified under Art. 552 C.C.P.

There are several complaints regarding the court's charge. One complains that the jury was not instructed on "what is not libel," and on the whole law of libel, depriving the jury of the right to determine *the law and the facts*, under the direction of the court, as in other cases" as provided in Art. 1, Sec. 8 of the Constitution of Texas, and Art. 1291 P.C.

These constitutional and statutory provisions were construed in McArthur v. State, 41 Tex. Cr. R. 635, 57 S.W. 847, and Squires v. State, 39 Tex. Cr. R. 96, 45 S.W. 147. The jury is required to take the law from the court and be bound thereby.

The charge as a whole appears to have protected appellant's rights. The trial judge appears to have presided and ruled with fairness, and no error is found in his rulings which would authorize a reversal.

The judgment is affirmed.